RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4097-15T4

C.S.,

 Plaintiff-Respondent,

v.

M.A.K.,

 Defendant-Appellant.

________________________________

 Submitted August 30, 2017 – Decided September 8, 2017

 Before Judges Rothstadt and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part,
 Monmouth County, Docket No. FV-13-1301-16.

 Law Offices of Jef Henninger, attorneys for
 appellant (Mr. Henninger, on the brief).

 Maria DelGaizo Noto, attorney for respondent.

PER CURIAM

 Defendant M.A.K. appeals from a May 4, 2016 final

restraining order ("FRO") entered in favor of plaintiff C.S.

pursuant to the Prevention of Domestic Violence Act of 1991

("PDVA"), N.J.S.A. 2C:25-17 to -35. We affirm.
 We derive the following facts from the record of the FRO

trial at which the parties and a responding police officer

testified. At the time of the final hearing, the parties had

been involved in a dating relationship for approximately six

years and lived together for the last two in defendant's home

with plaintiff's son who is developmentally disabled. On

Christmas in 2011, defendant gave plaintiff an automobile.

After the parties' relationship soured, defendant allowed

plaintiff and her son to continue to live in his home, but he

demanded that the automobile be returned to him by April 1,

2016.

 When plaintiff did not return the vehicle as demanded, the

parties began to argue when they arrived home from their

respective jobs at approximately 4:00 p.m. Prior to coming

home, defendant had been drinking at a local bar. When he

arrived, he approached plaintiff and demanded the keys to the

car. Plaintiff refused and the argument ensued. According to

plaintiff, during the course of the argument, defendant grabbed

her throat with two hands, applying pressure to the point that

she could not breathe and felt pain, before throwing her into

the furniture and her falling to the ground. Later that night,

plaintiff discovered that she suffered a large bruise to her leg

as result of the fall. Defendant denied he touched plaintiff

 2 A-4097-15T4
and stated that he merely "put [his] hands up" as plaintiff ran

by him, leaving the house while holding her neck and screaming.

 A neighbor called the police and two officers responded to

the scene. One of them spoke to plaintiff and found her to be

in hysterics, stating she had great difficulty speaking.

Eventually, she explained that defendant tried to strangle her

and threw her across the room. She also complained of pain in

her neck. According to the officer, he never observed any marks

on plaintiff's neck or any other evidence of physical injury.

When he later spoke to defendant, the officer found him to be

calm and cooperative.

 At the FRO hearing, plaintiff testified to defendant's

history of threats and physical violence. Defendant denied that

he was ever violent or that he ever committed an act of domestic

violence against plaintiff, but stated that she in fact was

violent towards him.

 In a comprehensive oral decision placed on the record on

May 4, 2016, Judge Angela White Dalton made detailed credibility

findings as to the alleged assault and found plaintiff's

testimony credible, while defendant's was not. The judge

concluded that defendant committed an assault under N.J.S.A.

2C:12-1, and that plaintiff needed a FRO for her protection.

 3 A-4097-15T4
 On appeal, defendant contends that contrary to the judge's

findings, plaintiff did not prove that defendant committed "a

predicate offense by a preponderance of the evidence.”

According to defendant, Judge Dalton failed to appreciate the

significance of the officer's testimony that there were no

physical marks on plaintiff's neck that would confirm an assault

had been committed. He also argues that there was no evidence

that an FRO was necessary "to protect . . . plaintiff from

future acts of domestic violence" because the parties'

"relationship [was] no longer intact and [they] demonstrate[d]

that they have no desire to come into contact with each other."

We disagree.

 Our review of a trial judge's fact-finding function is

limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's

fact-finding is "binding on appeal when supported by adequate,

substantial, credible evidence." Id. at 411-12 (citing Rova

Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484

(1974)). Moreover, "[b]ecause of the family courts' special

jurisdiction and expertise in family matters, appellate courts

should accord deference to family court factfinding." Id. at

413.

 "Deference is especially appropriate 'when the evidence is

largely testimonial and involves questions of credibility.'"

 4 A-4097-15T4
Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J.

108, 117 (1997)). This is so because the judge has the

opportunity to see and hear the witnesses as they testify,

thereby developing a "'feel of the case' that can never be

realized by a review of the cold record." New Jersey Div. of

Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (quoting

New Jersey Div. of Youth and Family Servs. v. E.P., 196 N.J. 88,

104 (2008)). A judge's purely legal decisions, however, are

subject to our plenary review. Crespo v. Crespo, 395 N.J.

Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P.

v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

 In adjudicating a domestic violence case, the trial judge

has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112,

125 (App. Div. 2006). The judge must first determine whether

the plaintiff has proven, by a preponderance of the evidence,

that the defendant committed one of the predicate acts

referenced in N.J.S.A. 2C:25-19(a), which incorporates assault,

N.J.S.A. 2C:12-1, as conduct constituting domestic violence.

Id. at 125-26. The judge must construe any such acts in light

of the parties' history to better "understand the totality of

the circumstances of the relationship and to fully evaluate the

reasonableness of the victim's continued fear of the

 5 A-4097-15T4
perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App.

Div. 1998); N.J.S.A. 2C:25-29(a)(1).

 If a predicate offense is proven, the judge must then

assess "whether a restraining order is necessary, upon an

evaluation of the facts set forth in N.J.S.A. 2C:25-29(a)(1) to

-29(a)(6), to protect the victim from an immediate danger or to

prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76

(2011) (quoting Silver, supra, 387 N.J. Super. at 126-27).

Whether a restraining order should be issued depends on the

seriousness of the predicate offense, on "the previous history

of domestic violence between the plaintiff and defendant

including previous threats, harassment[,] and physical abuse,"

and on "whether immediate danger to the person or property is

present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App.

Div. 1995) (citing N.J.S.A. 2C:25-29(a)); see also Cesare,

supra, 154 N.J. at 402.

 Applying these standards, we find defendant's arguments to

be without sufficient merit to warrant discussion in a written

opinion, R. 2:11-3(e)(1)(E), and we affirm substantially for the

reasons set forth in Judge Dalton's thorough and thoughtful oral

opinion. Suffice it to say, contrary to defendant's arguments,

there is no requirement for a victim of an assault to display

physical marks evincing the predicate act. As long as the

 6 A-4097-15T4
evidence demonstrates that there was an attempt "to cause . . .

bodily injury to" the victim, N.J.S.A. 2C:12-1(a)(1), that

includes "physical pain, illness or any impairment of physical

condition," N.J.S.A. 2C:11-1(a); see also State v. Stull, 403

N.J. Super. 501, 505 (App. Div. 2008), an assault occurred.

Moreover, the fact that the parties have ended their

relationship and are likely to separate does not in and of

itself warrant the denial of an FRO where the evidence supports

a finding that it is needed to protect a victim.

 Affirmed.

 7 A-4097-15T4